```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BENJAMIN MANN,

                                    Plaintiff,            REPORT AND
                                                          RECOMMENDATION
         -against-                                        22-cv-4740 (DG)(SIL)

CAMP FATIMA, INC., ROMAN CATHOLIC
BISHOP OF MANCHESTER, CORPORATION
SOLE, TRUSTEE OF THE DIOCESE OF
MACHESTER CENTRAL FUND TRUST, and
PETER ANTHONY LIBASCI, BISHOP OF THE
ROMAN CATHOLIC DIOCESE OF
MANCHESTER,

                                    Defendants.
----------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this disability discrimination action, on referral from the Honorable Diane Gujarati for Report and Recommendation, is Defendants' Camp Fatima, Inc. ("Camp Fatima"), Roman Catholic Bishop of Manchester, Corporation Sole, Trustee of the Diocese of Manchester Central Fund Trust ("Diocese of Manchester"), and Peter Anthony Libasci, Bishop of the Roman Catholic Diocese of Manchester ("Bishop Libasci," together with Camp Fatima and Diocese of Manchester, "Defendants") motion to dismiss Plaintiff Benjamin Mann's ("Mann" or "Plaintiff") Second Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Defendants' Motion to Dismiss ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [38].  By way of Complaint

dated July 13, 2022, *see* Complaint ("Compl."), DE [1-2], later modified by an Amended Complaint dated October 20, 2022, *see* Amended Complaint ("Am. Compl."), DE [10], and a Second Amended Complaint dated April 23, 2023, *see* Second Amended Complaint ("SAC"), DE [25], Plaintiff commenced this action against Defendants alleging violations of: (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq.*; and (3) New York State Executive Law § 291 *et seq.* ("NYS Human Rights Law" or the "NYSHRL"). *See generally* SAC.

For the reasons set forth herein, the Court concludes that Defendants are not subject to personal jurisdiction under New York's long-arm statute – specifically NY CPLR § 302(a)(1) or § 302(a)(3) – and therefore respectfully recommends that Defendants' Motion pursuant to Rule 12(b)(2) be granted, and that Plaintiff's Second Amended Complaint be dismissed without prejudice and with leave to refile in another jurisdiction if appropriate. Having recommended that Plaintiff's claims be dismissed for lack of personal jurisdiction, the Court does not consider Defendants' Motion pursuant to Rule 12(b)(6).

**I.      BACKGROUND**

**A. <u>Facts</u>**

Unless otherwise indicated, the facts set forth herein are taken from the Second Amended Complaint and the parties' respective motions, and are accepted as true for purposes of the instant motion.

Plaintiff Mann is an eighteen-year-old resident of Nassau County, New York, and is disabled within the meaning of the ADA, Section 504, and NYSHRL in that he

2

has Type 1 Diabetes ("T1D"), an endocrine disorder that impacts his ability to eat and metabolize food. *See* SAC at ¶¶ 1-2. Defendant Camp Fatima is a New Hampshire corporation with a principal place of business in Gilmanton Iron Works, New Hampshire. *Id.* at ¶ 3. Defendant Diocese of Manchester is a New Hampshire corporation with a principal place of business in Manchester, New Hampshire. *Id.* at ¶ 4. Defendant Bishop Libasci is an individual and the Bishop of the Roman Catholic Diocese of New Hampshire, with a principal place of business in Manchester, New Hampshire. *Id.* at ¶ 5.

Camp Fatima operates a summer camp in New Hampshire. *See id.* at ¶ 3. Plaintiff alleges that Defendants engaged in recruitment and marketing activities in New York. *Id.* at ¶ 10. These activities included advertisements on school and church bulletins, speaking engagements in New York, mail and e-mail solicitations to New York parents, and advertising on Camp Fatima's social media. *See id.* at ¶ 12. During the years 2017, 2018, and 2019, thirty-eight to thirty-nine percent of Camp Fatima's campers were New York State residents. *Id.* at ¶ 10. In those same years, New York campers constituted between thirty-eight and forty percent of Camp Fatima's revenue. *See id.* Since the 1970's, Camp Fatima has provided a free bus service between Long Island, New York and the camp. *See id.* at ¶ 11. Camp Fatima does not provide a bus service to or from any other location. *See id.*

Plaintiff's mother, Mary Elizabeth Heiskell ("Heiskell"), attended Camp Bernadette – a "sister" camp also owned by Camp Fatima – for several summers in the 1980s. *See* Affidavit of Mary Elizabeth Heiskell in Support of Plaintiff's

3

Opposition to Defendants' Motion ("Heiskell Aff."), DE [39], at ¶¶ 4(c)-4(d). Her brother attended Camp Fatima at or around the same time. *See id.* Heiskell's family originally learned of Camp Fatima and Camp Bernadette via Defendants' marketing efforts directed at their Catholic church in Garden City, New York. *Id.* at ¶¶ 4(a), 4(e). Heiskell's positive experiences with Camp Bernadette and Camp Fatima led her to first enroll Plaintiff when he was 10 years old. *Id.* at ¶ 4(g).

On or about January 12, 2019, Plaintiff's mother, Heiskell applied for Mann – who was then thirteen years old – to attend Camp Fatima for two consecutive two-week overnight sessions from July 14 to August 10, 2019. SAC at ¶ 14. Thereafter, Heiskell paid for Plaintiff's camp sessions. *See id.* at ¶ 15. On or about June 14, 2019, Mann was diagnosed with T1D, and Heiskell contacted Camp Fatima's nursing staff to discuss Plaintiff's condition. *See id.* at ¶ 16. Over the next seven weeks, Heiskell communicated with Camp Fatima's staff and Mann's doctors in order to "ensure that Plaintiff's attendance at Camp Fatima would be safe and appropriate, without undue burdens on Camp Fatima's staff." *Id.* Mann's endocrinologist and nutritionist also communicated directly with Camp Fatima's staff regarding Plaintiff's condition. *See* Heiskell Aff. at ¶ 6. On or about July 2, 2019, Heiskell submitted the required health forms to Camp Fatima on her son's behalf, as well as a request by Mann's endocrinologist for accommodations for Plaintiff's T1D medication and monitoring. *See* SAC at ¶ 17.

On July 14, 2019, Mann and Heiskell, as well as Plaintiff's father and sister, traveled to Camp Fatima. *See id.* at ¶ 18. After Mann checked in to his cabin, Camp

4

Fatima's Resident Director asked Plaintiff and his family to meet with the camp's Executive Director.  *See id.*  At this meeting, Mann was informed that he would not be permitted to attend Camp Fatima due to his T1D diagnosis.  *Id.*  Plaintiff and his family collected his belongings and returned home to New York.  *Id.*

Mann alleges that he suffered "serious emotional distress" as a result of his removal from Camp Fatima and "was greatly embarrassed, shamed and socially isolated by [the] experience."  *Id.* at ¶ 19.  Plaintiff was "very depressed" following the incident such that his parents were concerned for his safety and did not feel comfortable leaving him home alone.  Heiskell Aff. at ¶ 9.  Mann's father quit his job in order to be home with Plaintiff for the remainder of the summer, given that no substitute summer activities could be found on short notice.  *See* SAC at ¶ 19.  Mann felt "broken" and believed that "God [was] punishing [him]" due to his T1D diagnosis.  Heiskell Aff. at ¶ 10(d)-10(e).  Plaintiff subsequently participated in mental health counseling.  SAC ¶ 19; Heiskell Aff. at ¶ 10(h).  Approximately one year after the events at Camp Fatima, Mann was treated at a hospital in Queens, New York for suicidal ideation.  *See* SAC ¶ 19*;* Heiskell Aff. at ¶ 10(g).

On or about August 7, 2019, Heiskell filed a complaint on Plaintiff's behalf with the Disability Rights Section of the Civil Rights Division of the United States Department of Justice ("DOJ"), alleging violations of the ADA.  SAC at ¶ 20.  On March 9, 2020, DOJ referred Heiskell's complaint to a DOJ-sponsored mediation program.  *Id.* at ¶ 21.  Although the parties engaged in negotiations for approximately one year, they were unable to reach a formal settlement agreement.  *See id.*  Plaintiff

5

alleges that Camp Fatima insisted that any references to the ADA in the proposed settlement agreement and its proposed updated policies and procedures be removed, causing settlement negotiations to break down. *See id.* Mann thereafter declined to pursue an opportunity to become a counselor-in-training at Camp Fatima during the summer of 2021. *Id.* at ¶ 22.

### B. Procedural History

Based on the above, Heiskell commenced this action *pro se* on Mann's behalf as his next friend in the Supreme Court of the State of New York, County of Nassau, on July 13, 2022. *See* SAC at ¶ 23. On August 11, 2022, Defendants removed the case to this Court. *See* Notice of Removal, DE [1]. Judge Gujarati granted Plaintiff leave to submit an Amended Complaint, which was filed on October 20, 2022. *See* Order dated Sep. 21, 2022; Am. Compl.

Following an initial conference, this Court set a briefing schedule for Defendants' motion to dismiss the Amended Complaint, which Judge Gujarati referred to this Court for Report and Recommendation on November 22, 2022. *See* Minute Order, DE [15]; Order Referring Motion dated Nov. 22, 2022. On January 9, 2023, this Court granted Plaintiff's application to conduct jurisdictional discovery and postponed briefing of Defendants' motion to dismiss. *See* Electronic Order dated Jan. 9, 2023. Mann subsequently turned eighteen and the Court further stayed the briefing schedule to permit him either to obtain counsel or proceed on his own behalf. *See* Minute Order, DE [23].

6

Plaintiff has not obtained counsel and continues to proceed in this matter *pro se*. On May 10, 2023, the Court granted Mann leave to further amend his complaint and ordered that the Second Amended Complaint be filed on May 2, 2023 be the operative complaint in this action. *See* Minute Order, DE [29]. Defendants' motion to dismiss the Second Amended Complaint was fully briefed and filed on July 21, 2023, which Judge Gujarati referred to this Court for Report and Recommendation on August 8, 2023. *See* DEs [38] – [40]; Order Referring Motion dated Aug. 8, 2023. For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be granted, and that Plaintiff's Second Amended Complaint be dismissed without prejudice and with leave to refile in another jurisdiction if appropriate.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on materials beyond the pleadings. *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion"). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999);

7

*see T.A. v. Leff*, No. 17-cv-4291, 2018 WL 5077163, at *4 (E.D.N.Y. Jul. 19, 2018), *report and recommendation adopted sub nom. Lally v. Leff*, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27, 134 S. Ct. 746, 754 (2014). Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state," while general jurisdiction, on the other hand, "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Austin Envtl. Corp. v. Margarita Express, LLC*, No. 21-cv-4385, 2022 WL 1443356, at *7 (S.D.N.Y. May 6, 2022) (internal citations omitted).

To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, whether based on general or specific personal jurisdiction, courts engage in a two-part inquiry. *See Chloé v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007)). Initially, the Court determines "whether Defendants' acts bring them within the reach of [New York's] long-arm statute . . . ." *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). The Court then considers whether the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Id.*

8

## B. *Pro Se* Pleadings

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances" so that *pro se* plaintiffs do not "forfeit their rights by virtue of their lack of legal training"). The court, however, "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sep. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III. DISCUSSION

Defendants seek dismissal of the Second Amended Complaint in its entirety based on a lack of personal jurisdiction. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memorandum" or "Def. Mem."), DE [38-1], at 6-7. Mann counters that specific personal jurisdiction is proper under New York's long-arm statute – particularly NY CPLR § 302(a)(1) and § 302(a)(3) – and

9

that the exercise of jurisdiction comports with due process under the Constitution. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion ("Opposition" or "Opp."), DE [39], at 11-15.  If the Court were to conclude that personal jurisdiction is proper, Defendants argue that Plaintiff's NYSHRL claim against all Defendants and Plaintiff's ADA and Section 504 claims against the Diocese of Manchester and Bishop Libasci should be dismissed pursuant to Rule 12(b)(6).  *See* Def. Mem. at 13-15.

The Court concludes that Defendants are not subject to personal jurisdiction under New York's long-arm statute – neither NY CPLR § 302(a)(1), nor § 302(a)(3). Accordingly, the Court respectfully recommends that Defendants' Motion pursuant to Rule 12(b)(2) be granted, and that Plaintiff's Second Amended Complaint be dismissed without prejudice and with leave to refile in another jurisdiction if appropriate.  Having recommended that Plaintiff's claims be dismissed for lack of personal jurisdiction, the Court does not consider Defendants' Motion pursuant to Rule 12(b)(6).

### A. **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

As noted above, Plaintiff purports to assert specific personal jurisdiction[1] over Defendants pursuant to New York's long-arm statute, specifically NY CPLR §

---

[1] Mann does not assert general personal jurisdiction over Defendants in either the Second Amended Complaint or his opposition to Defendants' Motion.  For the sake of completeness, the Court notes that New York exercises general personal jurisdiction pursuant to NY CPLR § 301, which provides that New York has general jurisdiction over an entity that "has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks omitted).  Here, there are no allegations to suggest that Defendants – which are two New Hampshire entities and an individual operating in New Hampshire – have engaged in a continuous or systematic course of conduct in New York.  *See id.*  Accordingly, the Court does not consider general personal jurisdiction over Defendants.

302(a)(1) and NY CPLR § 302(a)(3).  *See* SAC ¶ 8.  Defendants argue that there is no specific personal jurisdiction over them under either statute and that the exercise of jurisdiction does not comport with due process.  *See* Def. Mem. at 9-11.  For the reasons set forth below, the Court concludes that it lacks personal jurisdiction over Defendants under either § 302(a)(1) or § 302(a)(3).  Accordingly, the Court recommends that Defendants' Motion pursuant to Rule 12(b)(2) be granted and that the Second Amended Complaint be dismissed in its entirety.

1. <u>NY CPLR § 302(a)(1)</u>

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . (1) transacts any business within the state or contracts anywhere to supply goods and services in the state" if the cause of action stems from such commercial activity.  N.Y. C.P.L.R. § 302(a)(1).  Thus, "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be met:  (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006)).

"A party need not be physically present in the state for the court to obtain personal jurisdiction."  *EnviroCare Techs.*, 2012 WL 2001443, at *2 (citing *Chloé*, 616 F.3d at 169).  Rather, "New York courts define transacting business as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

11

protections of its laws." *Best Van Lines, Inc.*, 490 F.3d at 246 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38 (1967)) (internal quotation marks omitted). Section 302(a)(1) "is a 'single act statute,' i.e., 'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Chloé*, 616 F.3d at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988) (collecting cases)).

As for the second prong of the long-arm analysis, "[t]he 'arising out of' element requires a 'substantial nexus' between the business transaction and the claim." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996)); *see E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18-cv-3217, 2018 WL 6528496, at *4 (S.D.N.Y. Dec. 12, 2018) ("The Second Circuit has held that this second condition requires a showing that the contacts with the state had a 'substantial relationship' to the cause of action.") (quoting *Solé Resort, LLC*, 450 F.3d at 103). "A transaction gives rise to a cause of action if it is substantially related to one or more elements of the claim." *Snegur v. Grupo Iberostar*, No. 14-CV-4445, 2016 WL 74414, at *3 (E.D.N.Y. Jan. 6, 2016). Moreover, "a chain of causation" between the transaction of business in New York and an unrelated claim does not by itself create jurisdiction under § 302(a)(1). *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 76 (2d Cir. 2023).

12

Applying the above standards, the Court cannot exercise personal jurisdiction over Defendants pursuant to § 302(a)(1). As to the transacting business prong, Plaintiff alleges that Camp Fatima contracted with Mann's parents to provide Plaintiff with a four-week stay at its facility in New Hampshire. *See* SAC ¶ 9. Camp Fatima purportedly engaged in significant advertisement and recruitment activities in New York state, and as a result, Camp Fatima derived thirty-eight to forty percent of its revenue from New York residents between 2017 and 2019. *See id.* at ¶¶ 10, 12. Further, in June and July of 2019 Camp Fatima's staff and Plaintiff's mother communicated by phone and email regarding Mann's T1D diagnosis. *See id.* at ¶¶ 16-17. With respect to the Diocese of Manchester and Bishop Libasci, the Second Amended Complaint does not contain specific allegations regarding their contacts with New York. Plaintiff instead refers generally to "Defendants' camp recruitment and marketing business activities in New York State." *See id.* at ¶¶ 10, 12. Heiskell's affidavit, submitted in opposition, further refers to Defendants' marketing activities in New York in the 1980s, which led Heiskell to attend Camp Fatima's sister camp as a child. *See* Heiskell Aff. at ¶ 4. This experience led Heiskell to first enroll Plaintiff at Camp Fatima when he was ten years old. *See id.*

Even assuming the above allegations establish that Defendants transacted business in New York within the meaning of § 302(a)(1), Plaintiff's claims do not arise out of these alleged activities. Mann's ADA, Section 504 and NYSHRL causes of action are premised upon Camp Fatima's decision to bar Plaintiff from attending camp following his arrival on July 14, 2019. *See* SAC ¶ 18. These claims arose out

13

of the allegedly discriminatory actions of Camp Fatima's staff in New Hampshire, not its advertising and camper recruitment activity in New York. *Compare Snegur,* 2016 WL 74414, at *3 (noting that in-state activity of booking a hotel room is too attenuated from tortious conduct taking place at foreign hotel), *with Hollins v. U.S. Tennis Ass'n,* 469 F. Supp. 2d 67, 76 (E.D.N.Y. 2006) (finding personal jurisdiction where foreign corporation discriminated against plaintiffs in the course of their in-state business). The fact that Defendants' advertising and recruitment activities may have started a chain of causation that led to Plaintiff's expulsion from Camp Fatima is not sufficient to convey jurisdiction. *See Edwardo,* 66 F.4th at 76 (concluding unrelated tort claim did not arise out of defendants' business in New York).

Moreover, the contract between Mann's parents and Camp Fatima cannot form the basis for jurisdiction because Plaintiff brings statutory discrimination claims, rather than a breach of contract claim. *See Mejia-Haffner v. Killington, Ltd.,* 119 A.D.3d 912, 914, 990 N.Y.S.2d 561, 564 (2d Dep't 2014) (concluding negligence claim did not arise from contract to attend ski camp). Nor do Mann's claims arise out of the communications between Camp Fatima's staff and Plaintiff's mother regarding his T1D. As such, Plaintiff's claims do not arise out of any of Defendants' alleged business transacted in New York. Accordingly, the Court concludes that Defendants are not subject to personal jurisdiction pursuant to NY CPLR § 302(a)(1).

14

2. <u>NY CPLR § 302(a)(3)</u>

Mann also asserts personal jurisdiction over Defendants pursuant to NY CPLR § 302(a)(3).[2] *See* SAC ¶ 8; Opp. at 11. Under § 302(a)(3), a court may exercise jurisdiction over a non-domiciliary who committed a tortious act outside New York that caused injury within the state if one of two conditions are met: (i) the defendant regularly does or solicits business in the state or derives substantial revenue from the state, or (ii) the defendant expected or reasonably should expected the act to have consequences in the state and derived substantial revenue from interstate commerce. NY CPLR § 302(a)(3).

Courts in the Second Circuit have held that discriminatory acts – such as those alleged here – fall within the meaning of "tortious acts" under § 302(a)(3). *Hollins*, 469 F. Supp. 2d at 77; *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210-11 (E.D.N.Y. 1996) ("The phrase 'tortious acts' encompasses more than simply torts."). To determine whether the tortious act caused injury within the state, courts apply a "situs-of injury test," which requires the Court to locate the original event which caused the injury. *Muraco v. Sandals Resorts Int'l*, No. 14-CV-4896, 2015 WL 9462103, at *4 (E.D.N.Y. Dec. 28, 2015). To that end, courts look to "the place where the *underlying, original event* occurred which caused the injury . . . *not the location where the resultant damages are felt by the plaintiff*." *M & M Packaging, Inc. v. Kole*, 298 F. App'x 39, 42 (2d Cir. 2008) (emphasis in original) (quoting *Whitaker v. Am.*

---

[2] Although Plaintiff's Opposition specifically references § 302(a)(3)(ii), the Second Amended Complaint refers to § 302(a)(3) as a whole. *See* Opp. at 11; SAC ¶ 8. Construing Mann's pleadings broadly, as required for *pro se* litigants, the Court considers both subsections of § 302(a)(3).

15

*Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). Moreover, it is well settled that "residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under § 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787 (1980)).

Here, the Court determines that Defendants did not cause an injury within New York state such that jurisdiction under § 302(a)(3) is appropriate. The alleged tortious act that caused Mann's injury – Plaintiff's expulsion from Camp Fatima due to his T1D diagnosis – occurred outside of New York, in New Hampshire. *See* SAC ¶ 18. The "situs-of-injury," or the location where the event-causing injury occurred, is therefore New Hampshire, not New York. *See M & M Packaging, Inc.,* 298 F. App'x at 42. Although Mann may have continued to feel the effects of Camp Fatima's discriminatory conduct upon his return to New York, the original injury occurred elsewhere. *See Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir. 1990) (determining situs-of-injury was New Jersey when New York resident employed in New Jersey was wrongfully discharged in New Jersey); *Muraco,* 2015 WL 9462103, at *4 (concluding situs-of-injury was St. Lucia where plaintiff injured his foot in St. Lucia despite continuing to feel pain upon return to New York). Moreover, the fact that Plaintiff is a New York resident, without more, is insufficient to find specific personal jurisdiction under § 302(a)(3). *See Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-CV-4660, 2021 WL 1299489, at *10 (S.D.N.Y. Apr. 7, 2021) (noting that Plaintiff's presence in New York is insufficient to establish jurisdiction under § 302(a)(3)).

Accordingly, Defendants did not cause an injury within New York, and jurisdiction is improper under § 302(a)(3).

### 3. Due Process Requirements

Given that there is no basis for specific personal jurisdiction over Defendants under New York's long-arm statute, the Court need not analyze whether the exercise of jurisdiction would comport with the Constitution's due process requirements. As such, the Court recommends that Defendants' Motion pursuant to Rule 12(b)(2) be granted, and that Plaintiff's Second Amended Complaint be dismissed in its entirety.

### B. **Defendants' Motion to Dismiss for Failure to State a Claim**

Having determined that this Court lacks personal jurisdiction over Defendants, this Court lacks the power to consider Defendants' Motion pursuant to Rule 12(b)(6) and therefore does not consider it. *See One Techs., LLC v. Amazon.com, Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) (citing *Arrowsmith v. United Press Intern.*, 320 F.2d 219, 221 (2d Cir. 1963) ("[A] court without [personal] jurisdiction lacks power to dismiss a complaint for failure to state a claim."); *KAH Ins. Brokerage Inc. v. McGowan*, No. 21-CV-5851(JMA)(ARL), 2023 WL 5435997, at *9 (E.D.N.Y. Aug. 4, 2023), *report and recommendation adopted*, No. 21-CV-05851, 2023 WL 5436134 (E.D.N.Y. Aug. 23, 2023) (declining to consider rule 12(b)(6) motion given recommendation of dismissal for lack of personal jurisdiction).

### C. **Leave to Amend**

Although Plaintiff did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity

17

to demonstrate that he has a valid claim.'" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) ); *see also Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). Nevertheless, "a district court may deny leave to amend when . . . amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, having recommended that Mann's claims be dismissed in their entirety based on a lack of personal jurisdiction, the Court determines that further amendment would be futile. This Court previously permitted Plaintiff to take jurisdictional discovery, which did not lead to facts sufficient to exercise personal jurisdiction over Defendants. Accordingly, the Court does not recommend that Mann be granted leave to further amend the Second Amended Complaint. Plaintiff, however, may refile this action in another jurisdiction if appropriate. *See Arrowsmith,* 320 F.2d at 221 ("A dismissal for lack of jurisdiction . . . does not preclude a subsequent action in an appropriate forum.").

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that Defendants are not subject to specific personal jurisdiction under NY CPLR § 302(a)(1) or § 302(a)(3), and

18

therefore respectfully recommends that Defendants' Motion pursuant to Rule 12(b)(2) be granted, and that Plaintiff's Second Amended Complaint be dismissed without prejudice and with leave to refile in another jurisdiction if appropriate. Having recommended that Plaintiff's claims be dismissed for lack of personal jurisdiction, the Court does not consider Defendants' Motion pursuant to Rule 12(b)(6).

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below. Defendants are directed to serve a copy of it on *pro se* Plaintiff via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:     Central Islip, New York
           November 8, 2023

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge